IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BRIAN J. NIELSEN,<br><br>Plaintiff,<br><br>v.<br><br>THE PATRIOT GROUP, LLC, a Utah limited liability company, dba ATK MOTORCYCLES OF UTAH; FRANKLIN WHITE, an individual; ATKUSA HOLDINGS, LLC, a Utah limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND**<br><br><br>Case No. 1:15-CV-00137<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court is defendants' Motion to Dismiss (Dkt. No. 12) and plaintiff's Motion to Amend Complaint (Dkt. No. 17). For the reasons stated below, the court GRANTS defendants' Motion to Dismiss, DENIES plaintiff's Motion to Amend Complaint, and declines to exercise supplemental jurisdiction over plaintiff's state law causes of action.

## PROCEDURAL HISTORY

On October 30, 2015, plaintiff Brian J. Nielsen filed a ten-count complaint against The Patriot Group, LLC dba ATK Motorcycles of Utah, Franklin White, and ATKUSA Holdings, LLC. (Dkt. No. 3.) The complaint alleged violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 28 U.S.C. § 1961 et seq., The Securities Exchange Act of 1934, and eight state law causes of action including violations of the Utah Uniform Securities Act, the Utah

1

Fraudulent Transfers Act, and common law claims for breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, fraud, and negligent misrepresentation. (*Id.*) On November 23, 2015, plaintiff filed an Amended Complaint & Jury Demand. (Dkt. No. 11.)  Thereafter, on December 8, 2015, defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to adequately allege the necessary elements of a RICO claim and because none of the instruments attached as exhibits to the complaint qualified as a security pursuant to The Securities Exchange Act of 1934. (Dkt. No. 12.) These two claims form the basis of this court's federal jurisdiction.

Plaintiff withdrew his claim under The Securities Exchange Act of 1934 on January 13, 2016, (Dkt. No. 16), and on the same date filed a Motion to Amend Complaint seeking to include additional specific factual allegations regarding the RICO claim and to join ATK Lightning, LLC and Rick M. Shelton as defendants. (Dkt. No. 17.)

## BACKGROUND

At the heart of plaintiff's complaint is unpaid wages in the amount of $14,565.87 earned for work he performed in a warehouse organizing and counting motorcycle parts inventory for Franklin White, along with other related tasks, from December 2014 to July 2015.  Second Am. Compl. ¶¶ 9-17.  Plaintiff alleges that four other employees have similarly not been paid wages for work performed in 2001 and in 2014-2015.  *Id.* at ¶¶ 33, 35, 36, 37.  Plaintiff also alleges that one independent contractor has not been paid for services he performed from 2008-2010.  *Id.* at ¶¶ 19-32.

Plaintiff further alleges that four creditors and/or investors (one of whom is unnamed) have not been paid money that is allegedly due to them for loans or investments that took place in 2001, 2006, 2013, and 2014. *Id.* at ¶¶ 33-34, 38-39.  The complaint asserts that defendants used "the ATK enterprise" to make fraudulent representations regarding material facts to induce the performance of labor and services by employees and contractors it did not intend to pay, and to induce investors to loan money. *Id.* at ¶¶ 49, 52(c).

## STANDARD OF REVIEW

"A Rule 12(b)(6) motion to dismiss may be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts" entitling him to relief under his theory of recovery. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "All well-pleaded factual allegations, as distinguished from conclusory allegations, must be taken as true" *Id.* (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)).  The pleadings must be construed liberally, and all reasonable inferences must be viewed in favor of the plaintiff.  *Id.*  "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence" to support his claims.  *Id.*  It is not enough that the pleading contain a statement of facts that "merely creates a suspicion of a legally cognizable right of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the court must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (quoting *Simon v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The claim for relief must be "plausible

on its face . . . [by containing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009).

## RICO CLAIM

Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962 (c).  The RICO Act provides that "any person injured in his business or property by reason of a violation" of this Act may sue in federal district court and recover his damages threefold.  *Id.* at § 1964(c).  "RICO is a powerful statute but also a confounding one," and thus presents significant challenges to "interpret the statute so as to capture racketeers—those who engage in a *pattern* of continued criminal activity—without also subjecting garden-variety fraud or criminal conduct to the statute's severe penal and monetary sanctions." *United States v. Knight*, 659 F.3d 1285 (10th Cir. 2011) (emphasis in original).

To state a claim for a RICO violation, plaintiff must plead (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."  *See Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).  A RICO claim must be pleaded with particularity under Fed. R. Civ. P. 9(b). *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). Furthermore, to properly plead a RICO violation, a plaintiff must show that the defendant violated the RICO statute, and that the plaintiff was injured "by reason of" that violation." *CGC Holding Co., LLC v. Hutchens*, 773

F.3d 1076, 1088 (10th Cir. 2014).  The court considered plaintiff's proposed Second Amended

Complaint & Jury Demand to evaluate whether plaintiff properly pled a RICO claim as it

represents plaintiff's most complete attempt to set forth the required factual allegations after

receiving notice of apparent deficiencies.  Thirty-two paragraphs (including subparagraphs) of

this pleading purportedly set forth the factual basis for plaintiff's RICO claim.  The court finds

that plaintiff failed to plead facts supporting the RICO elements of an enterprise and facts

supporting mail or wire fraud constituting RICO predicate acts committed by defendants.

Therefore, the court need not analyze whether a pattern of sufficient predicate acts existed.

## I.      Rico Enterprise

In framing his RICO claim, plaintiff alleged that defendant Franklin White is the sole

principal of The Patriot Group, LLC and ATKUSA Holdings.  Second Am. Compl. ¶ 3.  Plaintiff

further alleged that Mr. White failed to observe LLC formalities, failed to maintain LLC

company records, used the LLC as a façade for his own operations, and that The Patriot Group is

the alter ego of Mr. White.  *Id.* at ¶ 17.  The complaint broadly and nonspecifically alleges an

"enterprise" consisting of The Patriot Group and its principal and "alter ego" Franklin White,

who used the "ATK brand" as a resource to attract employees, investors and capital investment.

*Id.* at ¶¶ 2-4, 17, 52. The complaint also names ATK Lightning and Rick M. Shelton as members

of the "enterprise" who similarly "utilized the ATK enterprise to defraud Mr. Nielsen, and other

investors, creditors, and persons."  *Id.* at ¶ 52(c). There are no other facts alleged, however, that

set forth the involvement of ATK Lightning or Mr. Shelton in the "enterprise."

If an enterprise is to exist, it must have an association, existence, and decision-making structure separate from itself.  *Dirt Hogs, Inc. v. Natural Gas Pipeline Co. of America*, 2000 U.S. App. LEXIS 6463 (10th Cir. 2000).  For purposes of 18 U.S.C. § 1962(c) it is "required that the "person" and the "enterprise" engaged in racketeering activities be different entities."  *Board of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir.1992).  In other words, "a separate enterprise is not demonstrated by the mere showing that [a] corporation committed a pattern of predicate acts in the conduct of its own business" because a "person cannot logically be 'employed by or associated with' himself."  *Id.* Plaintiff has made no showing of an association between Mr. White and any other entity—other than his own LLC entities whose legal formalities were unobserved—that had an existence and purpose distinct from itself.  *See Board of County Comm'rs* 965 F.2d at 885.  Plaintiff's proposed addition of ATK Lightning and Rick M. Shelton as members of the enterprise does not save his claim, because other than mere conclusory statements that they were members, he pled no facts to show that they were associated or to suggest they had any actual involvement with conduct in an enterprise.  Second Am. Compl. ¶ 52(c).

Further, plaintiff's minimal recitation of the history of ATK's brand in the proposed Second Amended Complaint does not make the brand's parent company part of the enterprise when plaintiff's factual allegations are limited to the actions of Mr. White personally or under cover of the LLC entities of which he is the sole principal and alter ego. *Id.* at ¶ 52.  Because the facts alleged by the plaintiff do not constitute an enterprise with a separate identity, he has failed to properly plead the enterprise element of a RICO claim.

## II.   <u>Racketeering Activities of Mail and Wire Fraud</u>

Assuming, *arguendo*, that plaintiff had demonstrated a RICO enterprise, his RICO claim is still fatally flawed because it does not state racketeering activities. *See Sedima v. Imrex Co.*, 473 U.S. 479, 496 (U.S. 1985) (stating that "plaintiff must . . . allege each of these elements to state a claim"), *superceded on other grounds*.  Under the RICO Act, "racketeering activity" includes a laundry list of crimes, including mail and wire fraud and several types of felony criminal charges under state laws.  *See* 18 U.S.C. § 1961(1). "These acts of racketeering activity are often referred to as 'predicate acts' because they form the basis of liability for RICO." *Bacchus Industries, Inc. v. Arvin Industries, Inc*., 939 F.2d 887, 891 (10th Cir. 1991).

Plaintiff purports to base RICO racketeering activity on mail and wire fraud under 18 U.S.C. §1341 and § 1343.  He is therefore first required to plead factual allegations sufficient to support a claim under these statutes.  His original and first amended complaints state an insufficient conclusory allegation:  "The Patriot Group and Mr. White used mail services and wire, radio, or television communications, such as email, to perform the above fraudulent activities." Compl. ¶ 48 and Am. Compl. ¶ 48.  In his Second Amended Complaint, plaintiff similarly alleges that "mail services and wire, radio, or television communications, such as email" were utilized in conducting fraudulent activities, but then goes on to specifically identify six e-mail communications. ¶ 51. Specific factual allegations regarding correspondence delivered by use of mail services or carriers is entirely absent and thus insufficient to constitute a predicate act of mail fraud in support of a RICO claim.

With respect to the six email communications, to state a claim for wire fraud plaintiff is required to plead each of the elements under 18 U.S.C. § 1341:  that defendants (1) devised or

intended to devise "a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises; (2) with 'an intent to defraud;' and (3) used 'interstate wire communications to execute the scheme.' Materiality of the falsehood is also a required element of wire fraud." *United States v. Camick,* 796 F.3d 1206, 1217 (10th Cir. 2015) (internal references omitted).

All six of the e-mails alleged to be predicate acts by the plaintiff were sent by The Patriot Group and/or Mr. White.  Second Am. Compl. ¶ 51(a)-(g).  One of them was sent to plaintiff on December 4, 2014, containing lists representing inventory.  *Id.* at ¶ 51(a).  Three of them were sent during the period of plaintiff's active employment.  The first, on December 10, 2014, was allegedly sent to "investors and prospective investors" and set forth representations that The Patriot Group and Mr. White intended to expand their operations into Latin America. *Id.* at ¶ 51(b).   The second, around February 16, 2015, was sent to plaintiff and allegedly other "investors . . . employees . . . and independent contractor[s] who have performed services for The Patriot Group and Mr. White."  *Id.* at ¶ 51(c).  This e-mail claimed that Mr. White had a close relationship with Harley Davidson Motorcycles management and planned to "send[] a proposal . . . and do business together."  *Id.* The third, around February 25 and 26, 2015, was sent to plaintiff informing him that Mr. White was in communications with "the new COO" of Harley Davidson and was preparing a proposal to send to him. *Id.* at ¶ 51(d).

In an effort to collect his wages, around June of 2015, Nielsen entered into three agreements with Mr. White through The Patriot Group setting forth the amount owed to Nielsen as wages, plus interest and attorney fees necessary to collect the payments. *Id.* at ¶¶ 12-13.  Subsequently, Mr. White personally guaranteed these agreements in his individual capacity.  *Id.*

at ¶¶ 14.  Thereafter, Nielsen received three additional e-mails from either The Patriot Group, Mr. White, or both of them. The first two e-mails were sent on August 31, 2015, claiming that The Patriot Group was selling older ATK parts to a qualified buyer, that The Patriot Group and its "partners" were going to enter a new market segment the following year to sell their classic ATK inventory, representing that the company had a large number of customers (five of whom were already interested and qualified buyers), vendor lists, parts, owner's manuals, and product brochures and setting forth the value of these assets. *Id.* at ¶¶ 51(e)-(f). The third e-mail was sent from The Patriot Group and Mr. White to Nielsen on October 23, 2015, and stated that based on a pending sale of spare parts, Mr. White would be in a position to pay Nielsen the amounts due to him.  *Id.* at ¶¶ 51(g).  Other than the six specifically identified e-mails above, plaintiff alleged no other facts about the use of wire, radio, or television communication.  All other misrepresentations alleged in the complaint are insufficient to support a claim of wire fraud.

Wire fraud is not committed "simply by sending false statements" through email. *See Dirt Hogs, Inc.*, 2000 U.S. App. LEXIS 6463 (10th Cir. 2000). Instead, the emails must have been used to *further a scheme* to defraud through false pretenses.  *Id.* (emphasis added). Each of the specifically enumerated instances of wire communications occurred from December 2014 through October 2015.  These communications cannot support the existence of a much earlier scheme to defraud an employee of wages in 2001, a contractor of payment from 2008-2010, or to induce loans in 2001, 2006, or 2013.  *CGC Holding Co.*, 773 F.3d at 1088 (stating that a RICO predicate offense must not only be the "'but for' cause" of injury, but the proximate cause as well.).  As for the persons, employees, investors or prospective investors who were allegedly harmed in 2014 and 2015—including Nielsen—no facts are pled that these individuals relied

upon or were deceived by the enumerated e-mails. In cases involving fraud, "[w]hen a court evaluates a RICO claim for proximate causation the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *CGC Holding Co.*, 773 F.3d at 1088 (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006).  Plaintiff does not claim that he or other employees or investors were deceived or injured by defendants' misrepresentation of inventory in the December 4, 2014 e-mail, by defendants' alleged Latin America expansion plans in the December 10, 2014 e-mail, or by defendants' alleged relationship with Harley Davidson management in the February 16, 2015 and February 25-26, 2015 e-mails.  Similarly, plaintiff did not identify any injuries to himself or other investors and employees after August or September 2015, let alone that such injuries were caused by the misrepresentations in those three e-mails.  In the absence of any causal connection or nexus between the alleged injuries and the e-mail misrepresentations, plaintiff has failed to show that but for them, the injuries suffered would not have occurred.  *See Id.* at 1089.  Because the enumerated e-mails do not support a showing of predicate acts, the court does not need to evaluate whether these acts constitute a "pattern of racketeering activity."

Because plaintiff has failed to allege facts sufficient to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, we grant defendants' motion to dismiss plaintiff's RICO claim.

### DENIAL OF MOTION TO AMEND COMPLAINT

Pleadings can only be amended by consent of the opposing party or by leave of the court once the time for amendment as a matter of course has passed. *United States ex rel. Ritchie v.*

*Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009).  Pursuant to Federal Rule of Civil Procedure 15(a), the court should freely grant leave to amend "when justice so requires." Motions to add parties are also considered motions to amend and therefore must also comply with Rule 15(a).  *Id.*  Leave to amend may be withheld for a limited set of reasons, one of which includes the "futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  As discussed above, the additional factual allegations made in plaintiff's proposed Second Amended Complaint & Jury Demand do not cure the flaws fatal to its RICO claim, so plaintiff's motion to amend is denied.

## STATE LAW CLAIMS

Federal district courts have supplemental jurisdiction over other claims so related to claims in an action in which it has original jurisdiction that they "form part of the same case or controversy."   28 U.S.C. § 1367 (a).  Nevertheless, a district court may "decline to exercise supplemental jurisdiction" over such claims at its own discretion when it has "dismissed all claims over which it has original jurisdiction."  *Id.* at §1367 (b).

In this case, plaintiff voluntarily dismissed one of its federal question claims (securities exchange act violation) and failed to allege facts sufficient to sustain its RICO violation claim. The remaining eight counts in plaintiff's complaint are state law claims, including two which arise under Utah state statutes. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228 (10th Cir. 2011).  Accordingly, the court declines supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

The court GRANTS defendants' Motion to Dismiss, DENIES plaintiff's Motion to Amend Complaint, and declines to exercise supplemental jurisdiction over plaintiff's state law causes of action.  The case is dismissed.

SO ORDERED this 1st day of February, 2016.

BY THE COURT:

Clark Waddoups
United States District Court Judge